**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 22, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

EDWARD LEONARDO PAREDES,
also known as Ed Paredes, also known
as Eddie Perales,

Defendant - Appellant.

No. 05-4081

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. NO. 2:04-CR-150-DAK)**

---

Submitted on the briefs:

Scott C. Williams, Salt Lake City, Utah, for Defendant - Appellant.

Paul M. Warner, United States Attorney, and Diana Hagen, Assistant United
States Attorney, Salt Lake City, Utah, for Plaintiff - Appellee.

---

Before **BRISCOE** and **HARTZ**, Circuit Judges, and **KRIEGER**, District Judge.[*]

---

**HARTZ**, Circuit Judge.

---

[*]The Honorable Marcia S. Krieger, United States District Judge for the
District of Colorado, sitting by designation.

Edward Paredes challenges his sentence of 37 months' imprisonment, arguing that the district court erred (1) in applying a Sentencing Guidelines enhancement for relocation of a fraudulent scheme, (2) imposing an unreasonable sentence, and (3) treating the Guidelines as mandatory. We affirm.

## I.    FACTS

Mr. Paredes was indicted on March 17, 2004, in the United States District Court for the District of Utah on one count of conspiracy, *see* 18 U.S.C. § 371, ten counts of bank fraud, *see* 18 U.S.C. § 1344, four counts of wire fraud, *see* 18 U.S.C. § 1343, and four counts of mail fraud, *see* 18 U.S.C. § 1341. All charges arose from the following multistate scheme operating between April and August 2001: Mr. Paredes and various coconspirators recruited others, primarily from New York, to come West for work. Upon arriving in one of the cities in which the scheme operated, the recruits were taken by Mr. Paredes to obtain local state identification cards using their true identities and then to local banks, where they were instructed by Mr. Paredes to open checking accounts and request expedited checks using their real names and false addresses. The accounts were opened with initial deposits of substantial amounts of cash provided by Mr. Paredes. The recruits were then instructed to purchase electronic equipment at local retailers using checks written on the accounts. Before the checks cleared, however, the money was withdrawn, victimizing the retailers. Each recruit was paid $1,000. The scheme operated in Nevada, Utah, Idaho, and Washington.

Mr. Paredes was convicted by a jury on all counts. The presentence report (PSR) used the 2000 version of the United States Sentencing Guidelines (USSG) applicable at the time of the offenses. It calculated Mr. Paredes's offense level as follows:

| | |
|---|---|
| Base Offense Level under USSG § 2F1.1(a): | 6 |
| Enhancement based on amount of loss under USSG § 2F1.1(b)(1)(I): | 8 |
| Enhancement for his role in the offense under USSG § 3B1.1(a): | 4 |
| Enhancement for relocation of the offense under USSG § 2F1.1(b)(6)(A): | 2 |
| Enhancement for multiple victims under USSG § 2F1.1(b)(2): | 2 |
| TOTAL: | 22 |

(Section 2F1.1 was deleted in the November 2001 version of the Guidelines; its provisions were renumbered and consolidated with § 2B1.1.) At sentencing on April 4, 2005, the district court adopted the PSR's calculation with a single change: It adjusted the proposed enhancement under § 3B1.1(a) down from four to three because it concluded that Mr. Paredes was more of a manager of the scheme than its leader. Combined with a criminal-history category of I, the offense level of 21 produced a Guidelines range of 37 to 46 months, and the court sentenced him at the bottom of that range.

## II. DISCUSSION

### A. Application of USSG § 2F1.1(b)(6)(A) / § 2B1.1(b)(9)(A)

Mr. Paredes first argues that the district court committed an error of law in applying an enhancement under USSG § 2F1.1(b)(6)(A) to his sentence. Because the identical language now appears in § 2B1.1(b)(9)(A), we will refer to the new

section numbering. We review the district court's factfinding for clear error and its legal interpretation of the Guidelines de novo. *United States v. Bedford*, 446 F.3d 1320, 1324 (10th Cir. 2006).

Section 2B1.1(b)(9)(A) provides for a two-level enhancement "[i]f the defendant relocated, or participated in relocating, a fraudulent scheme to another jurisdiction to evade law enforcement or regulatory officials." Mr. Paredes argues that this enhancement did not apply because (1) there was no evidence that the scheme was relocated for the purpose of evading law enforcement; (2) Mr. Paredes did not himself relocate; (3) there was no evidence that Mr. Paredes was the "driving force" in relocating the scheme; and (4) Mr. Paredes did not "attempt[] to disguise his identity or manipulate records of his activities." Aplt Br. at 17. We disagree.

First, Mr. Paredes argues that there was no evidence that the scheme was relocated from one jurisdiction to another for the purpose of evading law enforcement. But Jose Vergara-Diaz, a recruit who participated in the scheme, testified at trial about an occasion when the participants, including Mr. Paredes, and a U-Haul full of fraudulently obtained goods moved from Utah to Idaho because Utah became "hot" after one of the recruits was arrested. This testimony suffices to establish that the relocation was "to evade law enforcement."

Mr. Paredes also argues that the district court erred in applying § 2B1.1(b)(9)(A) to him because he did not himself actually relocate. Throughout

the scheme, he contends, he remained a resident of New York City. He relies on an Eighth Circuit opinion, *United States v. Smith*, 367 F.3d 737 (8th Cir. 2004), *vacated on other grounds*, 543 U.S. 1103 (2005), which set out a three-prong test for application of § 2B1.1(b)(9)(A): "(1) the defendant relocated from one jurisdiction to another; (2) the fraudulent scheme moved with the defendant; and (3) the defendant intended to evade law enforcement or regulatory officials." *Id.* at 740. In *Smith*, however, neither the fact that the defendant relocated nor the fact that the scheme relocated with him were in dispute.

We disagree with *Smith*'s dictum that the first prong, on which Mr. Paredes relies, is required by the language of the Guidelines subsection. The Guidelines language—"[i]f the defendant relocated, or participated in relocating, a fraudulent scheme to another jurisdiction to evade law enforcement or regulatory officials"—clearly refers to the relocation of the *scheme* only, not the relocation of the defendant himself. *Smith* misreads "the defendant relocated" as an independent phrase, when the immediately following language "or participated in relocating" makes clear that the verb *relocated* is a transitive verb whose direct object is *a fraudulent scheme*. One can participate in a scheme's relocation without relocating oneself, and the district court was entitled to conclude, based on the evidence, that that is what occurred in this case. The district court did not err.

Mr. Paredes's final two arguments—that there was no evidence that he was the "driving force" behind the relocation or that he changed his identity or attempted to conceal his activities—find no support in the language of the provision. Section 2B1.1(b)(9)(A) requires only that the defendant *participated* in relocating the scheme; he did not have to be the "driving force" behind the relocation for the enhancement to apply. And, as noted above, the government presented evidence that Mr. Paredes participated in the relocation of this scheme from Utah to Idaho. Similarly, although evidence that he concealed his identity or activities may have been relevant to a showing that the relocation was for the purpose of evading law enforcement, § 2B1.1(b)(9)(A) contains no requirement of concealment, other than the relocation itself.

## B.    Reasonableness

After *United States v. Booker*, 543 U.S. 220 (2005), we review sentences for reasonableness. *See United States v. Galarza-Payan*, 441 F.3d 885, 887 (10th Cir. 2006). Reasonableness review "necessarily encompasses both the reasonableness of the length of the sentence, as well as the *method* by which the sentence was calculated." *United States v. Kristl*, 437 F.3d 1050, 1055 (10th Cir. 2006). A sentence imposed within a properly calculated Guidelines range is presumptively reasonable, but a defendant may rebut that presumption with a showing that the sentence is unreasonable under the factors set out in 18 U.S.C. § 3553(a). *Id*.

Mr. Paredes argues that his sentence, which is at the bottom of the applicable Guidelines range, is unreasonable because the district court overemphasized the Guidelines and "failed to consider 18 U.S.C. § 3553—either expressly or implicitly." Aplt Br. at 20. But the court need not recite on the record each of the factors in § 3553(a): "We do not require a ritualistic incantation to establish consideration of a legal issue, nor do we demand that the district court recite any magic words to show us that it fulfilled its responsibility to be mindful of the factors that Congress has instructed it to consider." *United States v. Lopez-Flores*, 444 F.3d 1218, 1222 (10th Cir. 2006) (internal quotation marks omitted). The district court must, however, "provide sufficient reasons to allow meaningful appellate review of [its] discretionary sentencing decision[]," *United States v. Sanchez-Juarez*, 446 F.3d 1109, 1117 (10th Cir. 2006), and

> where a defendant has raised a nonfrivolous argument that the § 3553(a) factors warrant a below-Guidelines sentence and has expressly requested such a sentence, we must be able to discern from the record that the sentencing judge did not rest on the guidelines alone, but considered whether the guidelines sentence actually conforms, in the circumstances, to the statutory factors,

*id.* (internal quotation marks, brackets, and ellipsis omitted).

At Mr. Paredes's sentencing hearing the district court reviewed the Guidelines calculation, adjusting one point downward from the recommendation in the PSR. Both the defense and the prosecution were allowed to present arguments, and the court explained that it was adopting a sentence at the lower

-7-

end of what it determined to be the applicable Guidelines range.  Although the court did not specifically mention the factors in § 3553(a), neither did Mr. Paredes make a "nonfrivolous argument that the § 3553(a) factors warrant[ed] a below-Guidelines sentence" that would have triggered the district court's obligation to address the factors on the record.  *See id*. at 1117.  All the arguments presented during the sentencing hearing related to the application of the Guidelines and to Mr. Paredes's general character as "a good, productive, hardworking, God-fearing student."  R. Vol. VII at 12.  Mr. Paredes argues on appeal that the materials presented to the district court implicated several of the statutory factors, but the defense did not mention at sentencing any of the nonguidelines § 3553(a) factors or make any argument that the statute justified a below-Guidelines sentence.  Mr. Paredes has not overcome the presumption that the court's sentence at the bottom of the applicable Guidelines range was reasonable.

### C.    Constitutional *Booker* error

Mr. Paredes's final challenge to his sentence is that the district court committed constitutional error under *Booker*.  "A district court commits constitutional *Booker* error when it applies the Guidelines in a mandatory fashion, makes factual findings (other than the fact of prior convictions), and imposes a sentence above the maximum that would apply in the absence of such findings."

*United States v. Clark*, 415 F.3d 1234, 1238 (10th Cir. 2005) (internal quotation marks and emphasis omitted).

In sentencing Mr. Paredes, the district court found that (1) the intended loss of the scheme exceeded $200,000 but was less than $350,000; (2) the offense involved more than minimal planning or a scheme to defraud more than one victim; (3) Mr. Paredes relocated, or participated in relocating, the scheme to evade law enforcement; and (4) he was an organizer or leader of a criminal activity that involved five or more participants. The only issue is whether the district court used these findings to enhance Mr. Paredes's sentence *mandatorily*.

Mr. Paredes points to the district court's comment that "I think otherwise I'm basically stuck with the guidelines." App. Vol. VII at 24. On the other hand, the district court did mention its discretion: "I think that's the best I can do under the law, despite his pleas. I mean, that's an exercise of discretion. That's right on the line, I think, even now." *Id.* We generally assume that the district court knows the law and applies it correctly. *See United States v. Rose*, 185 F.3d 1108, 1110-11 (10th Cir. 1999). Because counsel for both parties briefed the district court on the implications of *Booker* and the Supreme Court's opinion was the subject of extensive comment within the judiciary, we will not interpret the court's imprecise comments on the extent of its discretion as blatant disregard of *Booker*. We are not persuaded that the district court failed to recognize that the Guidelines are advisory. We have held that it is not error for the district court to

give them "heavy weight." *United States v. Terrell*, 445 F.3d 1261, 1265 (10th Cir. 2006).

## III. CONCLUSION

We AFFIRM the sentence imposed by the district court.