UNITED STATES COURT OF APPEALS

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

CARLA ERICA GONZALES
SANCHEZ and CARLOS ADAN
ALVARADO,

      Defendants-Appellants.

Nos. 06-2099 and 06-2216
(D.C. No. CR-05-377-BB)
(D. N.M.)

**ORDER ON REMAND FROM THE UNITED STATES SUPREME COURT**[*]

Before **BRISCOE**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **GORSUCH**, Circuit Judge.

This case is before us on remand from the United States Supreme Court. Carla Erica Gonzales Sanchez and Carlos Adan Alvarado were convicted in federal district court for possession and distribution of methamphetamine. On appeal, we affirmed the convictions and rejected Ms. Gonzales's challenge to her sentence. *See United States v. Gonzales*, 252 F. App'x 900 (10th Cir. 2007). Ms. Gonzales pursued certiorari from the Supreme Court on her sentencing appeal,

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

and on March 24, 2008, the Court granted her petition and remanded the matter for further consideration in light of its intervening decision in *Gall v. United States*, 128 S. Ct. 586 (2007).

Because our reconsideration is limited to Ms. Gonzales's sentencing appeal, our disposition and analysis affirming Ms. Gonzales's and Mr. Alvarado's convictions stand unaffected, and we therefore reinstate all of our prior Order and Judgment in this case with the exception of Part IV.2.[1]

In Part IV.2, we addressed Ms. Gonzales's argument that certain statements by the district court indicated that, when sentencing Ms. Gonzales, the court considered itself unduly bound by the Guidelines, and, in particular, its policy judgments about the appropriate length of sentences for certain drug offenses. *See Gonzales*, 252 F. App'x at 907. In rejecting her argument, we explained that our disposition was dictated by our precedents, citing by way of example *United States v. Terrell*, 445 F.3d 1261, 1263-64 (10th Cir. 2006), and *United States v. Paredes*, 461 F.3d 1190, 1194-95 (10th Cir. 2006). *See Gonzales*, 252 F. App'x at 908 ("We see no principled way to reach a different conclusion in this case."). In *Terrell*, the district court announced that it gave "heavy weight" to the

---

[1] Although Part IV.1 of our Order and Judgment also addressed an issue relating to Ms. Gonzales's sentence – namely, whether she was entitled to a "minor participant" reduction under the Guidelines – our holding in that Part was not affected by the Supreme Court's decision in *Gall*.

Guidelines, and we affirmed, explaining that "giv[ing] a high degree of weight to the Guidelines," while perhaps not required, was not error. 445 F.3d at 1265. In *Paredes*, the district court stated that it considered itself "stuck with the [G]uidelines," and we again found no error. 461 F.3d at 1194-95. These decisions, in turn, owed much to our then-existing rule that sentencing courts could not vary from the Guidelines based on a disagreement with the policy preferences expressed in them. *See, e.g.*, *United States v. McCullough*, 457 F.3d 1150, 1171-72 (10th Cir. 2006).

Since we decided Ms. Gonzales's case, however, two decisions from the Supreme Court have dramatically changed the landscape of sentencing law. In *Gall*, the Court made clear that, while the Guidelines are important and must be considered as a starting point for sentencing decisions, they should not be treated by district courts as presumptively reasonable, let alone entitled to controlling weight, at the expense of the court's own determination of an appropriate sentence in light of all Section 3553(a) factors. *Gall*, 128 S. Ct. at 596-97. In *Kimbrough v. United States*, 128 S. Ct. 558, 570 (2007), the Court stressed that, "while [Section 3553(a)] still requires a court to give respectful consideration to the Guidelines," district courts are not categorically bound by the Guidelines' policy choices and are instead "permit[ted] . . . to tailor the sentence in light of other statutory concerns as well." As we recently observed, *Gall* and *Kimbrough*

did a very great deal to alter our circuit's preexisting sentencing precedent. *See United States v. Smart*, 518 F.3d 800, 807 (10th Cir. 2008) ("It is clear that *Gall* and *Kimbrough* cannot be reconciled with [various] features of our circuit's standard of review" case law, proceeding to list five such examples.).

In light of the Court's new guidance in *Gall* and *Kimbrough*, and following the example of several other recent cases both within and without this circuit faced with similar situations,[2] we believe the most appropriate course in this case is to vacate Ms. Gonzales's sentence and remand the matter to the district court for resentencing.  If, on remand, Ms. Gonzales again requests a variance and the district court believes such a variance ought to be denied, it may not do so on grounds now made impermissible by *Gall* and *Kimbrough* – for example, because of a belief that it lacks authority to vary from the Guidelines, that it has to treat the Guidelines as presumptively reasonable, or that it is categorically forbidden from disagreeing with the policy judgments the Guidelines reflect.  The court is to conduct resentencing in light of, and consistent with, *Gall* and *Kimbrough*, "consider[ing] all of the § 3553(a) factors" and making "an individualized

---

[2] *See, e.g.*, *United States v. Trotter*, 518 F.3d 773 (10th Cir. 2008); *United States v. Trotter*, 2008 WL 565431 (10th Cir. 2008); *United States v. Santillanes*, 2008 WL 1790381 (10th Cir. 2008); *United States v. Stratton*, --- F.3d ----, 2008 WL 656514 (11th Cir. 2008); *United States v. Peterson*, 2008 WL 647032 (11th Cir. 2008); *United States v. Pankey*, 2008 WL 723990 (4th Cir. 2008).

assessment based on the facts presented." *Gall*, 128 S. Ct. at 596, 597.[3]

The mandate which issued originally from this court on November 19, 2007 in number 06-2099 is recalled. A new mandate shall reissue forthwith in that matter.

ENTERED FOR THE COURT

Neil M. Gorsuch
Circuit Judge

---

[3] In light of our decision to vacate and remand Ms. Gonzales's sentence, her motion to file new briefing with this court is denied as moot.

FILED
United States Court of Appeals
Tenth Circuit

October 26, 2007

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

CARLA ERICA GONZALES
SANCHEZ and CARLOS ADAN
ALVARADO,

Defendants-Appellants.

Nos. 06-2099 and 06-2216
(D.C. No. CR 05-377 BB)
(D. N.M.)

---

ORDER AND JUDGMENT[*]

---

Before **BRISCOE**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and
**GORSUCH**, Circuit Judge.

---

Carla Erica Gonzales Sanchez and Carlos Adan Alvarado were arrested in

their hotel room after narcotics agents, believing they had Ms. Gonzales's consent

to enter, found in plain view in the room a variety of drug paraphernalia. After

conviction on federal charges, Ms. Gonzales and Mr. Alvarado challenge the

district court's denial of their motion to suppress, contending that they did not

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

give consent to enter the hotel room. They also contest the district court's denial of a motion for mistrial after a government witness commented on their invocation of the right to counsel. We reject the former claim because the facts reasonably found by the district court indicate that Ms. Gonzales invited the officers to enter. We reject the latter claim because the district court immediately offered a curative instruction sufficient to address any prejudice. Finally, Ms. Gonzales challenges her sentence, arguing that she should have received a two-level Guidelines reduction for being only a minor participant in the drug crimes, and also that the district court erroneously believed itself bound by the Guidelines. We hold that the district court properly applied the law and imposed a reasonable sentence.

I

A

Taking the facts in the light most favorable to the government as the prevailing party before the district court, as we are obliged to do, they reveal that, at around 7:00 p.m. one evening in January 2005, Agent Brice Current, a member of the Region II Narcotics Task Force in the San Juan County Sheriff's Office, received a telephone call from an employee at the Best Western Hotel in Bloomfield, New Mexico, tipping him off to suspected drug-related activity in the hotel. Agent Current, along with Agent Jacob Schmidt, promptly drove to the

hotel. The manager identified Room 112, registered to Ms. Gonzales, as the source of his suspicions. He based his concern on the fact that Ms. Gonzales was a local resident (her identification listed a residential address across the street from the hotel); she and Mr. Alvarado were in the room for long periods of time and did not pick up the phone when calls were transferred to them; and various visitors came to the room throughout the day, often using the side entrance of the hotel rather than the lobby, despite the fact that the lobby entrance was closest to Room 112.

After meeting with the hotel manager and at approximately 9:00 p.m., the agents approached Room 112. Both wore plain clothes with their firearms concealed. After knocking on the door, the agents saw the peep hole darken and heard movement inside, as if drawers were being opened and closed. The agents knocked again with the same result. After knocking a third time, a female voice asked in English, "Who is it?" to which Agent Current replied "Brice" (his first name). Dist. Ct. Order at 2. Ms. Gonzales then opened the door partially. Agent Current displayed his badge and explained that he was with the Region II Narcotics Task Force, and he asked if he and Agent Schmidt could come in the room to talk. According to Agent Current's testimony, Ms. Gonzales responded by opening the door the rest of the way, stepping back, nodding her head affirmatively, and motioning the agents in with her hand. *Id*. at 3.

The agents entered the room, where they encountered both Ms. Gonzales and Mr. Alvarado, apparently Ms. Gonzales's boyfriend at the time. They explained to the pair that there had been complaints about drugs being sold from the hotel room, to which Ms. Gonzales responded simply "no drugs." *Id.* While in the room, however, the agents saw in plain view on the dresser a bag of what appeared to be methamphetamine (later determined to be methyl sulfonyl methane ("MSM") – a common cutting agent for preparing methamphetamine), an electronic scale on a desk, and off-white powder on the toilet seat in the adjacent bathroom. The agents called in officers who had been on standby near the hotel, who assisted in arresting the defendants.

After the room was secured, a search warrant was obtained and executed. During the search, agents found on the windowsill six bags of methamphetamine (each bag containing slightly less than one ounce), additional amounts of MSM in the toilet, various scales and empty bags, and a pay/owe ledger inside Ms. Gonzales's purse. They also searched Mr. Alvarado's car, parked in the hotel lot, and found another container of MSM.

B

Mr. Alvarado and Ms. Gonzales were charged with one count of possession with intent to distribute 50 grams or more of a mixture containing methamphetamine, *see* 21 U.S.C. § 841(a)(1) & (b)(1)(B), and one count of

- 4 -

conspiracy to possess with intent to distribute 50 grams or more of a mixture containing methamphetamine, *see* 21 U.S.C. § 846. A superseding indictment increased the penalty provision for each charge based on the purity of the seized drugs, pursuant to 21 U.S.C. § 841(b)(1)(A).

Both defendants pled not guilty and moved to suppress the evidence seized, contending that the agents' entry into their hotel room was nonconsensual and thus unreasonable under the Fourth Amendment. In a written order, the district court denied the motion, finding that Ms. Gonzales had consented to the agents' entry. *See* Dist. Ct. Order at 5-12.

While testifying during the trial that followed, Agent Current was asked by Mr. Alvarado's counsel whether police obtained any fingernail scrapings from defendants to determine the presence of methamphetamine on their persons. Agent Current replied, "No sir. I believe they had requested to speak to an attorney during the interview process." *See* Trial Tr. at 142. Mr. Alvarado and Ms. Gonzales immediately moved for a mistrial, arguing that the agent impermissibly commented on their invocation of the right to counsel and the right to remain silent.

In response, the district court found that the comment by Agent Current was an inadvertent mistake and a result of the agent trying to recount chronologically what had happened. The court did, however, instruct the jury that Mr. Alvarado

and Ms. Gonzales were entitled to an attorney and that the jury should not draw any conclusion or inference from their invocation of that right. Defense counsel urged that this curative instruction was insufficient and renewed their motion for mistrial; the district court denied the request and the trial continued. After three days of proceedings, the jury found Mr. Alvarado guilty on both counts, and found Ms. Gonzales guilty of possession but not conspiracy. The district court sentenced Mr. Alvarado to 262 months imprisonment and Ms. Gonzales to 151 months.

Both defendants now appeal the district court's denial of the motion to suppress and the district court's refusal to grant a mistrial. Additionally, Ms. Gonzales appeals her sentence. We address each contention in turn.

II

Ms. Gonzales and Mr. Alvarado do not dispute that the agents saw drug paraphernalia in plain view in the hotel room, but they do argue that the agents' entry was unlawful. The reasonableness of the agents' actions under the Fourth Amendment is a legal question and thus one we review *de novo*. In cases challenging a warrantless entry leading to an arrest, the burden is on the government to (1) "present clear and positive testimony that consent was unequivocal and specific and freely and intelligently given"; and (2) "show that the police did not coerce the defendant into granting [her] consent." *United*

*States v. Pena*, 143 F.3d 1363, 1366 (10th Cir. 1998) (internal quotation marks omitted). While approaching these legal tests *de novo*, we must take the facts in the light most favorable to the prevailing party, here the government, accepting the district court's factual findings unless clearly erroneous. *See United States v. Cheromiah*, 455 F.3d 1216, 1220 (10th Cir. 2006). And, indeed, the primary challenge in this case concerns those factual findings.

1.    According to the district court, after Agent Current asked Ms. Gonzales if he and Agent Schmidt could enter the room to talk, Ms. Gonzales responded by opening the door more fully, standing back, nodding her head, and gesturing the agents in with a sweep of her hand. *See* Dist. Ct. Order at 8. Although Ms. Gonzales never vocalized her consent, the district court found that she expressed it unequivocally through her actions in response to Agent Current's question. *See United States v. Gordon*, 173 F.3d 761, 766 (10th Cir. 1999) ("Non-verbal conduct, considered with other factors, can constitute voluntary consent to search."). Moreover, the district court found that Ms. Gonzales understands English well enough to have understood Agent Current's request to enter the room and to have given free and voluntary consent in response to that request. *See* Dist. Ct. Order at 9.

Ms. Gonzales and Mr. Alvarado dispute most of these and other findings. For example, according to Ms. Gonzales, she never answered "Who is it?" when

the agents knocked on the door. Ms. Gonzales likewise claims that she understands little English and that she did not understand anything Agent Current said to her at the door. Finally, she contends that she only stepped behind the door and opened it wider to prevent the agents from seeing her in her pajamas, and in no way gestured to invite the agents to enter the room. At bottom then, the dispute before us boils down to the simple question whether to believe appellants' account of events or the agents': Who is lying? Who is telling the truth? Resolving such credibility disputes is treacherous in the best of circumstances. The task is made all the harder at the remove at which we work, without the benefit of being able to watch Ms. Gonzales and Agent Current testify in person.

This, of course, is precisely why our standards of review dictate such substantial deference to the trial judge in this arena. And, indeed, on the record before us, we cannot say the district court's credibility and factual determinations are clearly erroneous. As the district court noted, Ms. Gonzales's testimony contains various inconsistencies and implausibilities that rendered her account less plausible than Agent Current's. *See* Dist. Ct. Order at 7-8. While testifying that she was in the process of moving from one home to another, she could not remember the address of the home to which she was moving, or even the street on which it was located. She attested that the only visitors to her room were Mr. Alvarado, her son, and her siblings – yet, the hotel manager registered the names

of several others who visited the room. Though professing to be unable to understand the agents speaking English at the door, Ms. Gonzales admitted she understood Agent Current to be asking about "drugs" after entering the room and that she said the words "no drugs" in response. She also used a number of other English phrases on the day of her arrest and shortly thereafter.

2. Even if Ms. Gonzales did consent to the agents' entry, appellants urge us to find that her consent was coerced. We cannot agree, especially in light of our holding in *Pena*.

In *Pena*, four police officers visited a motel room after receiving complaints of drug activity. 143 F.3d at 1365. The officers knocked on the door, explained in English to the man who answered the door that they had received complaints, and asked whether they could enter and look around, though they did not specifically inform the defendant that he could decline to cooperate. *Id.* The defendant later argued coercion, emphasizing that he lacked sufficient English to understand the officers. The district court rejected this argument, finding, among other things, that the defendant "understood more than enough English to know what [the officers] asked him" and that he had freely given his consent. *Id.* We affirmed. The facts here are virtually identical to those in *Pena*. Indeed, if anything, *Pena* involved an arguably more coercive situation. There, four (not two) officers asked to enter the room. All four officers were uniformed with guns

holstered (rather than in plain clothes with guns concealed). Holding an unduly coercive situation existed here would thus defy our responsibility to precedent.

3. Mr. Alvarado makes an additional, though similar, argument – contending that, under the totality of the circumstances and especially given the time of day (9:00 pm), no reasonable person would have felt free to end the encounter with police officers at the door. *See Florida v. Bostick*, 501 U.S. 429, 439 (1991) ("[I]n order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter.").

We are constrained to disagree. Once again, this court has already rejected a highly analogous claim. In *United States v. Spence*, we found nothing awry with a "knock and talk" encounter where, just as here, "the agents were dressed in plain clothes and did not display their weapons at any time, . . . their tone and demeanor were professional, and . . . there was no evidence that they raised their voices or physically touched or restrained [defendant]." 397 F.3d 1280, 1284 (10th Cir. 2005). Mr. Alvarado's insistence that the hour of the "knock and talk" encounter (9:00 p.m.) distinguishes this case and renders the agents' conduct unreasonable is unpersuasive. While we agree that police waking people in their

homes in the middle of the night can well contribute to a coercive atmosphere, we cannot help but agree with the district court that no such coercion is inherently and always present at 9:00 p.m., an hour at which "the vast majority of people are still awake," Dist. Ct. Order at 11, perhaps especially in a hotel setting where it is not unknown for guests, visitors, room service attendants, and others to come and go regularly at that hour. *Compare United States v. Cormier*, 220 F.3d 1103, 1107, 1109-10 (9th Cir. 2000) (finding no detention where an officer conducted a "knock and talk" at a motel room after 8:00 p.m.) *with Harless v. Turner*, 456 F.2d 1337, 1338-39 (10th Cir. 1972) (per curiam) (finding unlawful search where police awakened defendants in their home at 1:45 am) *and Fontenot v. Cormier*, 56 F.3d 669, 671, 675-76 (5th Cir. 1995) (finding unlawful seizure where police came to home at 2:30 am).

### III

Ms. Gonzales and Mr. Alvarado next challenge the district court's denial of their motion for mistrial following Agent Current's reference at trial to the defendants' invocation of the right to counsel. A trial court may grant a motion for mistrial when, in its discretion, it concludes that the defendant's right to a fair and impartial trial has been impaired. We review such decisions for an abuse of discretion, *see United States v. Nash*, 482 F.3d 1209, 1217 (10th Cir. 2007), and we discern none here.

After entertaining defense counsel's objections regarding Agent Current's testimony, the district court stated to the jury:

> Ladies and Gentlemen, the Officer just referred to the defendant's request for counsel. As you probably know, from watching TV, one who is accused of a crime or who is a suspect, is entitled to have an attorney. And there is nothing in that that should be used to infer guilt or innocence. That is a constitutional right for which each of us are guaranteed, and you should not draw any conclusion from that or any inference from their request to have an attorney to consult with.

Trial Tr. at 145-46. The district court, thus, hardly ignored appellants' concern but sought to allay it. To be sure, defense counsel argued that this instruction was insufficient to cure the prejudice to their clients and that only a new trial would suffice. But the district court, with the advantage (unlike us) of being able to observe and discern the impact of Agent Current's comment and the curative instructions given to the jury, determined that such a course of action was unnecessary to ensure appellants a fair trial.

As best we can tell from our vantage, the district court's course was entirely reasonable. The agent's answer came in response to a question from Mr. Alvarado's attorney, not in response to an invitation from the government. The district court found, based on its assessment of the witness, that Agent Current did not intend any impropriety but was simply "trying to relate chronologically what happened," and explain why no fingernail scraping was taken upon arrest. Trial Tr. at 144-45. And the prosecution made no subsequent effort to exploit the

comment. All of these facts combine to suggest the district court acted well within its discretion in choosing the course it did, and our review of the trial as a whole and the strength of the evidence presented only serve to strengthen our conviction on this score.

IV

Two issues relating to Ms. Gonzales's sentence merit our attention.

1. Ms. Gonzales argues that the district court should have granted her a two-level "minor participant" reduction when calculating her Guidelines offense level. *See* U.S.S.G. § 3B1.2. With such a reduction, her Guidelines-recommended sentencing range would have been 121 to 151 months, rather than the 151 to 188 months the district court employed. We review the district court's interpretation of the sentencing guidelines *de novo*, though its factual findings applying the guidelines may be disturbed only in the presence of clear error. *See United States v. Onheiber*, 173 F.3d 1254, 1258 (10th Cir. 1999).

Ms. Gonzales has a point. At sentencing, the government seemed to argue that, in order to qualify for a minor role reduction, she had to admit her guilt. *See* Sent. Tr. at 11-12. This argument was erroneous; the admission of guilt is not a categorical prerequisite to earning a minor participation reduction. But the government also argued that the evidence Ms. Gonzales adduced about her participation "completely failed" to suggest she was only a minor participant.

- 13 -

Sent. Tr. at 11-12. In denying the minor participation reduction, the district court stated simply that it "agree[d]" generally with the government and, thus, presumably with both of its arguments. Sent. Tr. at 12.

Accordingly, aside from the question of admission of guilt, we understand the government to have argued, and the district court to have agreed, that Ms. Gonzales failed, as a matter of fact, to establish that her conduct rendered her a minor participant. Given ample evidence in the record supporting such a finding, and Ms. Gonzales's burden to establish her eligibility for a minor participant reduction, we cannot deem the district court's decision to be clearly erroneous. For example, Ms. Gonzales rented and paid in cash for the hotel room in which police found her and Mr. Alvarado with significant amounts of drugs. Trial testimony indicates that police recovered from Ms. Gonzales's purse drug-related pay/owe sheets that were similar to one found in Mr. Alvarado's wallet. *See* Trial Tr. at 101. And police discovered "unreal" amounts of air freshener, often used to mask the odor of drugs, in Ms. Gonzales's car. *Id.* at 156-58. The district court itself, in responding to Ms. Gonzales's argument in favor of a minor participant reduction, noted that the jury had "found it was [Mr. Alvarado's] methamphetamine, and [that] [Ms. Gonzales] was helping him distribute it." Sent. Tr. at 11. Thus, even if we interpret the district court's statement that it "agree[d]" with the government to mean that the court accepted an erroneous

characterization of the minor participant reduction, its decision to deny the reduction is supported by alternative, non-erroneous reasons.

As such, we disagree with Ms. Gonzales that the district court's (possible) error requires that we remand this case for resentencing, as any such error was harmless in this instance. *See United States v. Wilken*, 498 F.3d 1160, 1169 (10th Cir. 2007) ("Even where we find an error in calculating the Guidelines range, . . . we need not vacate and remand the sentence if the error was harmless."). A district court's error in applying the Guidelines is harmless unless it "affect[ed] the district court's selection of the sentence imposed." *United States v. Montgomery*, 439 F.3d 1260, 1263 (10th Cir. 2006) (internal quotations omitted). Because the district court found that Ms. Gonzales had not established, in light of the evidence against her and regardless of any non-admission of guilt, that she was only a minor participant, we have no doubt that the court would have denied the sentencing reduction even in the absence of the government's erroneous description about the requirements for a minor role reduction.

2.  Ms. Gonzales also argues that the district court considered itself bound to impose a sentence within the range suggested by the Guidelines. If true, this would be error. *See, e.g., United States v. Gonzalez-Huerta*, 403 F.3d 727, 731 (10th Cir. 2005) (en banc).

After hearing Ms. Gonzales's arguments in favor of varying below the Guidelines range, the district court stated, in relevant part:

> I don't agree with the level of penalties imposed for drugs under the guidelines as a general proposition, but I do think it's important to honor the concept of the guidelines and try to have some uniformity within the system and not depart widely for reasons of sympathy, passion, or prejudice.
> . . . .
> I will impose a sentence which I think is sufficient, although arguably greater than necessary to support the goals of the guidelines. I think the nature and circumstances of the offense and the facts brought out at trial, along with the quantity of methamphetamine and the way Congress has characterized methamphetamine . . . as an extremely dangerous drug, and [sic] indicate that a significant sentence would be appropriate.
> . . . .
> The Court has reviewed the presentence report factual findings and considered the Sentencing Guidelines. The Court has also reviewed the factors set forth in 18 United States Code, Section 3553(a), and indeed, if those were the only factors, I would have a different sentence. The Guidelines, however, hold me to a bedrock sentence that is longer than I would choose to give, if it were solely discretionary with me.

*Id.* at 15-16, 18.

We do not doubt that certain portions of this statement, read in isolation, could appear to imply a reluctant acquiescence to the Guidelines. *See id.* at 18. (indicating that the court was held "to a bedrock sentence that is longer than [it] would choose to give, if it were solely discretionary"). But reading the district court's statements as a whole and in context, we think that the court properly understood the discretionary nature of the Guidelines and simply chose to apply its discretion to impose a within-Guidelines sentence. Indeed, had the district

- 16 -

court truly thought it bound by the Guidelines, it would have had no need to entertain Ms. Gonzales's argument for a variance in light of the Section 3553(a) factors, and no need to indicate that it had reviewed and considered those factors. To us, the district court's statements, considered in full, bespeak an understandable and valid effort to strike a balance between, on the one hand, paying appropriate heed to the Guidelines as an expression of congressional sentencing intentions and an effort at sentencing uniformity and, on the other hand, the trial judge's discretion to impose a reasonable sentence in light of Section 3553(a), regardless of any Guidelines range and according to every defendant's unique circumstances.

Our conclusion is bolstered by a review of our precedents. Trial judges "are presumed to know the law and apply it in making their decisions." *United States v. Ruiz-Terrazas*, 477 F.3d 1196, 1201 (10th Cir. 2007) (internal citations omitted). And we have found the presumption that trial judges are aware of their (well known) discretion in sentencing remains undisturbed in cases markedly similar to this one. For example, in *United States v. Terrell*, we affirmed a sentencing determination where the district court expressly "announc[ed] that it would give 'heavy weight' to the Guidelines 'because they were designed to meet the objectives of 3553(a).'" 445 F.3d 1261, 1263-64 (10th Cir. 2006). Similarly, in *United States v. Paredes*, we upheld a sentence where the district court stated

- 17 -

that "I think otherwise I'm basically stuck with the guidelines." 461 F.3d 1190, 1194-95 (10th Cir. 2006). We determined that the language in both cases, when considered in context of the courts' full remarks and actions at sentencing, simply reflected the courts' recognition of their obligation to consider the Guidelines, not an obligation to follow the Guidelines blindly. We see no principled way to reach a different conclusion in this case.

* * *

The judgments of the district court are affirmed.

ENTERED FOR THE COURT


Neil M. Gorsuch
Circuit Judge