FILED
United States Court of Appeals
Tenth Circuit

August 25, 2025

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

      No. 24-2108

MARC CANDELARIA,

      Defendant - Appellant.

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. 1:22-CR-00767-KWR-1)**
_____

Amanda Skinner, Assistant Federal Public Defender (Margaret A. Katze, Federal Public Defender, and Kurt J. Mayer, Assistant Federal Public Defender, with her on the briefs), Federal Public Defender's Office, Albuquerque, New Mexico, for Defendant-Appellant.

James R.W. Braun, Assistant United States Attorney (Holland S. Kastrin, Acting United States Attorney, with him on the briefs), United States Attorney's Office, District of New Mexico, Albuquerque, New Mexico, for Plaintiff-Appellee.

_____

Before **MATHESON**, **BACHARACH**, and **McHUGH**, Circuit Judges.

_____

**BACHARACH**, Circuit Judge.

_____

This appeal grew out of convictions for bank fraud and bank robbery. *See* 18 U.S.C. §§ 1344(2), 2113(a). In the appeal, we address the lawfulness of a car search and a prison sentence.

The car search was based on consent by the defendant's wife. The defendant contends that his wife could not consent to a search of the car because it wasn't hers. But the district court could reasonably find that the wife had actual authority over the car when she consented. So her consent was enough to allow the search.

The challenge to the sentence turns on the circumstances surrounding the crimes. In considering these circumstances, the district court largely focused on the defendant's history, brutality, and dishonesty. The defendant challenges this focus, contending that the district court failed to consider unwarranted sentencing disparities and imposed an unreasonable sentence. In our view, however, the district court reasonably considered the statutory factors selecting the sentence.

1.    **The search didn't violate the Constitution.**

In searching the car, law-enforcement officers found a handwritten note that resembled the content of a piece of paper used in a recent bank robbery. The government used the handwritten note to prosecute the defendant for bank robbery.

In district court, the defendant argued that the government had needed a warrant for the search. The district court rejected this argument,

concluding that the wife had validly consented to the search based on her actual authority. The defendant appeals that ruling.[1]

To address this appellate argument, we view the evidence in the light most favorable to the government. *United States v. Cortez*, 965 F.3d 827, 833 (10th Cir. 2020). With this view of the evidence, we apply the clear-error standard when addressing the district court's factual findings. *Id.* But the existence of actual authority is a mixed question of law and fact, triggering de novo review. *United States v. Arreguin*, 735 F.3d 1168, 1174 (9th Cir. 2013); *United States v. Gevedon*, 214 F.3d 807, 810 (7th Cir. 2000).

The existence of actual authority turns on the wife's authority over the car. *United States v. Bass*, 661 F.3d 1299, 1305 (10th Cir. 2011). To determine whether the wife had this authority, we consider whether she had either

- mutual use of the car through joint access or

- control over the car for most purposes.

---

[1]    The district court provided three other rationales: (1) The wife had apparent authority to consent to the search, (2) law-enforcement officers would inevitably have discovered the note, and (3) exclusion would be unwarranted under the good-faith exception. The government defends these rationales and argues, in the alternative, that the search was valid under the automobile exception and the foregone-conclusion doctrine. We need not address these rationales because the wife had actual authority to consent to the search.

*United States v. Rith*, 164 F.3d 1323, 1329 (10th Cir. 1999). The district court found that the wife had both mutual use and control. We agree with the district court as to the wife's control over the car.[2]

Because the couple was married, we generally presume that both spouses had joint control over the car. *Id.* at 1330. So the question is whether the defendant rebutted that presumption. *Id.* at 1330–31.

The wife testified that she had ready access to the car. She acknowledged that she had ordinarily coordinated with the defendant because he had been the main driver. But she testified that she had felt free to use the car and hadn't needed the defendant's permission.

The couple's use of the car supported the wife's stated belief that she had control of the car. For example, the wife testified that

- she had been the registered owner of the car,

- she had access to a key for the car,

- she had joint property in the car (like a car seat), and

- she had treated the car as a joint household expense with the defendant.

Based on this testimony, the wife had control over the car for most purposes.

---

[2]    We need not address whether the wife had mutual use of the car through joint access.

The testimony showed that she had gained even greater control by the time that she consented to the search. By then, the couple had separated and the local police seized the car and moved it to an impoundment lot. The owner of the lot said that the wife was the only person allowed to get the car because she was the registered owner.[3] So the defendant appeared to lose his own control over the car after its impoundment.[4]

Given this evidence, we conclude that the district court was right in concluding that the wife had actual authority over the car. So her consent was valid and the resulting search didn't violate the Constitution. *See United States v. Cody*, 7 F.3d 1523, 1527 (10th Cir. 1993) (stating that a search pursuant to voluntary consent doesn't violate the Fourth Amendment even in the absence of probable cause or a warrant).

## 2.    The sentence wasn't procedurally or substantively unreasonable.

The convictions resulted in a 312-month prison sentence even though the guideline range was only 46 to 57 months. In selecting the sentence, the district court focused largely on the defendant's history and the events surrounding the crimes.

---

[3]    We need not decide whether the lot owner's statement would have been dispositive in itself.

[4]    There's no evidence that the defendant tried to regain access to the car after its impoundment.

5

### a. The bank fraud involved a savage beating, and the bank robbery involved a violent threat.

The crimes involved threatening behavior and brutality.

**Bank fraud.** When the bank fraud took place, the defendant had recently moved out of property owned by his father-in-law. One night, the father-in-law went to sleep and woke up eyeing an intruder.[5] The intruder pummeled the father-in-law, who suffered four skull fractures and narrowly escaped death.

The intruder knew where to find the father-in-law's checks and went to get one. When the intruder returned with the check, he ordered the father-in-law to put the amount as $23,000 and leave the payee's line blank. Someone later inserted the defendant's name as the payee, and the defendant obtained the $23,000 after endorsing the check.

**Bank robbery.** In committing the bank robbery, the defendant gave the teller a piece of paper stating that the robber was a cartel member and would kill the teller if he included a dye pack or pressed an alarm.

---

[5]    The district court determined that the defendant had conspired with the intruder to commit the bank fraud. In his reply brief, defense counsel argued that the district court had improperly assumed that the defendant himself had committed the robbery. But the district court acknowledged that the defendant might not have committed the robbery himself. Instead, the district court focused on the defendant's collusion with the assailant and the defendant's benefit from the robbery.

**b.    The sentence was not procedurally unreasonable.**

Every sentence must be procedurally reasonable. *United States v. Cookson*, 922 F.3d 1079, 1091 (10th Cir. 2019). This requirement includes consideration of the statutory factors bearing on the appropriate sentence. *See Gall v. United States*, 552 U.S. 38, 51 (2007) (stating that we must "ensure that the district court committed no significant procedural error, such as . . . failing to consider the § 3553(a) factors"). One of these factors is the avoidance of unwarranted sentencing disparities. 18 U.S.C. § 3553(a)(6).

The defendant argues that the district court disregarded these disparities. We disagree.

The parties agree that we apply the plain-error standard because the defendant didn't object to the district court's explanation for the sentence. Under the plain-error standard, the defendant must prove not only that the district court erred but also that the error would have been clear or obvious. *United States v. Chavez*, 723 F.3d 1226, 1232 (10th Cir. 2013). In our view, the district court didn't err at all.

The court said that it had considered a provision addressing unwarranted sentencing disparities, and we typically take the court at its word. *See* R., vol. 3, at 498 (stating that the court had considered all the statutory factors); *United States v. Paredes*, 461 F.3d 1190, 1193 (10th Cir. 2006) (stating that the district court doesn't need to "recite on the record"

each of the sentencing factors to show that it "fulfilled its responsibility" to consider the statutory factors).

Moreover, the district court determined the guideline range (46 to 57 months) and considered whether it would yield an appropriate sentence. When the court computes and considers the guideline range, the court has necessarily considered whether the sentence would avoid an unwarranted sentencing disparity. *United States v. Gantt*, 679 F.3d 1240, 1248–49 (10th Cir. 2012). So the court's examination of the guideline range entailed consideration of unwarranted sentencing disparities. Given the consideration of potential disparities, the district court didn't procedurally err in imposing the sentence.

### c.    The sentence was substantively reasonable.

Every sentence must also be reasonable from a substantive perspective. *United States v. Cookson*, 922 F.3d 1079, 1091 (10th Cir. 2019). To determine whether a sentence is substantively reasonable, we apply the abuse-of-discretion standard. *United States v. Barnes*, 890 F.3d 910, 915–16 (10th Cir. 2018). In our view, the sentence fell within the court's discretion for four reasons.

First, the district court could reasonably infer that the defendant had participated in the plan to beat his father-in-law and steal a $23,000 check. The defendant ultimately endorsed the check and said that he had obtained the check to invest for the father-in-law. But the father-in-law didn't know

that the check was going to the defendant. The court could thus infer the defendant's collusion in the attack.

Second, the district court could reasonably rely partly on the savagery of the attack on the father-in-law after he was forced to sign the check.

Third, the district court could reasonably rely partly on trauma to the bank tellers after the defendant had claimed membership in a cartel and threatened death if a teller were to press an alarm or supply a dye pack.

Fourth, the district court could reasonably consider the defendant's previous acts of dishonesty, such as lying on an employment application, stealing at a previous job, and conspiring to steal from his mother.

These four factors support a large upward variance.

**Reliance on a single factor.** The defendant argues that the district court shouldn't have focused solely on the brutality of the crimes, pointing to *United States v. Crosby*, 119 F.4th 1239 (10th Cir. 2024). But *Crosby* does not create a blanket prohibition against variances driven by a single factor.

In *Crosby*, we concluded that a sentence of 5 days or time served, whichever was less, had been so light that it was substantively unreasonable for a defendant convicted of possessing child pornography. *Id.* at 1243, 1249. In determining that the sentence was substantively unreasonable, we reasoned that the district court had failed to address

statutory factors (retribution, deterrence, prevention of unwarranted sentencing disparities, and consideration of the available sentences) that would have appeared to require a sentence exceeding 5 days or time served. *Id.* at 1249–51. But we said nothing to suggest a general rule that a sentence is substantively unreasonable whenever a district court relies on a single factor.

Such a rule would make little sense because a single factor may dwarf other considerations. *See, e.g.*, *United States v. DeRusse*, 859 F.3d 1232, 1238 (10th Cir. 2017) (holding that the district court doesn't go "outside the wide range of rationally permissible choices" when giving substantial weight to a single factor, particularly when this factor is important); *see also United States v. Pugh*, 515 F.3d 1179, 1192 (11th Cir. 2008) (quoting *Gall v. United States*, 552 U.S. 38, 57 (2007)) (noting that a district court doesn't commit reversible error simply because it "attached great weight" to a single factor). After all, the defendant doesn't identify any other factors that the district court failed to consider. The defendant simply disagrees with how far the district court should have varied rather than argue that other factors would have led to a lighter sentence.

**Measuring the variance based on the brutal attack.** In challenging the extent of the variance, the defendant also argues that the upward variance created unwarranted disparities because the sentence would have surpassed the guideline range even if the defendant had been convicted of a

10

separate crime for the attack on his father-in-law. For example, the defendant points out that even if his father-in-law had died in the attack, a conviction of second-degree murder would have yielded a guideline range falling below the actual sentence. *See* U.S.S.G. § 2A1.2 (governing the offense level for second-degree murder). This approach is misguided legally and factually.

This approach is legally misguided because a district court shouldn't try to avoid unwarranted sentencing disparities by comparing the actual sentence to the guideline range that would have applied upon a conviction for uncharged conduct. *See United States v. Guevara-Lopez*, No. 24-2045, slip op. at 35–36 (10th Cir. Aug. 4, 2025) (to be published) (concluding that it's "substantively unreasonable" for a district court to consider the severity of a sentence based on what the guideline range would have been for underlying acts that hadn't been separately charged); *United States v. Allen*, 488 F.3d 1244, 1251–52, 1259–62 (10th Cir. 2007) (stating that we would not consider a hypothetical guideline range for a conviction on uncharged conduct when reviewing the substantive reasonableness of a sentence).

The defendant's approach is also misguided factually because a hypothetical conviction for the defendant's uncharged conduct might have yielded a guideline range roughly equivalent to the actual sentence. For example, reasonable benchmarks for the beating could include attempted

murder based on the savagery of the attack. A conviction for attempted murder with a life-threatening bodily injury, combined with a criminal-history category of III,[6] would have yielded a guideline range of 262–327 months. U.S.S.G. § 2A2.1. The district court's sentence of 302 months fell within that range.

These comparisons reflect different approaches to create benchmarks for an upward variance tied to the brutality of the attack. Given the different approaches, the benchmarks might reasonably vary among district judges. Some judges might use second-degree murder as a benchmark, as the defendant does. Other judges might use attempted murder, as the government does. Either benchmark would appear useful as a way to measure the severity of the defendant's conduct. As a result, the district court acted reasonably in determining the extent of the variance.

**Reliance on other factors.** The court could also reasonably rely on other factors to impose a large upward variance. For example, the defendant not only robbed a bank, but also traumatized the tellers by threatening to kill and claiming to be a cartel member.

---

[6]    The defendant had a criminal-history category of I. But the district court appeared to view the actual criminal history as worse than this category would suggest, concluding that the conduct underlying his past charges indicated that he would continue taking whatever he wanted regardless of the physical or financial cost to others. R., vol. 3, at 491–92.

The court could also rely on the defendant's duplicity in robbing his father-in-law. The father-in-law had helped the defendant, investing with him, only to lose $23,000 through the defendant's robbery. And of course, the attack targeted the defendant's own family member, leaving him with four skull fractures and lifelong trauma.

Finally, the court could rely on the defendant's history of dishonesty, including previous thefts from his employers and his own mother. The defendant's dishonest conduct continued when he omitted information from an employment application.

**Assessment of the district court's discretion.** Given the combination of factors, we conclude that the 26-year sentence fell within the district court's discretion. We thus reject the defendant's challenge to the substantive reasonableness of the sentence.

Affirmed.