# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1838

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * Northern District of Iowa. |
| Steven E. Smith, | * |
| | * |
| Appellant. | * |

_____

Submitted: February 9, 2004
Filed: May 5, 2004

_____

Before RILEY and RICHARD S. ARNOLD, Circuit Judges, and HOVLAND,[1] District Judge.

_____

RILEY, Circuit Judge.

Steven E. Smith (Smith) pled guilty to credit card fraud in violation of 18 U.S.C. § 1029(a)(5), (b)(1), and (c)(1)(A)(ii). The district court[2] sentenced Smith to 74 months imprisonment, three years of supervised release, and restitution in the

---

[1]The Honorable Daniel L. Hovland, Chief Judge, United States District Court for the District of North Dakota, sitting by designation.

[2]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

amount of $95,092.44. On appeal, Smith contends the district court erred in applying a two-level sentencing enhancement for relocating a fraudulent scheme to avoid authorities or, alternatively, for obstructing justice. U.S.S.G. §§ 2B1.1(b)(8)(A), 3C1.1. Smith also claims the district court erred in denying him a downward reduction for acceptance of responsibility. U.S.S.G. § 3E1.1. We affirm.

## I. BACKGROUND

Smith was a drug user who financed his addiction by committing theft crimes and credit card fraud. In September 1999, Smith was arrested in Iowa City for trading drugs for cars. After serving ten days in jail, the Iowa authorities released him to participate in a 28-day drug treatment program. From December 1999 to June 2000, Smith committed identity fraud by using the name Steven C. Smith to open at least thirteen credit card accounts. Smith also relapsed and began using drugs again.

In June 2000, Smith was arrested in Coralville, Iowa, for third-degree theft and for tampering with records related to a dog food scam. Within weeks of his arrest, he talked with federal law enforcement agents and agreed to cooperate by doing controlled drug buys. Smith knew he could still be prosecuted on federal charges even though he was cooperating, but he understood if federal charges were filed against him, his cooperation would positively impact the disposition of any federal charges. Smith remained in state custody until mid-November 2000.

Beginning in mid-November and continuing through the spring of 2001, Smith cooperated with law enforcement by making controlled drug buys. Thereafter, Smith was hospitalized and, following his discharge, he failed to renew his contacts with federal and state authorities. Smith resumed using drugs and committing identity fraud, this time by using the name Steven R. Smith to open five credit accounts and by charging nearly $15,000 in six Iowa cities. Smith also moved out of his girlfriend Sheila O'Neil's (O'Neil) apartment. Thereafter, federal agents visited O'Neil and

informed her they had an arrest warrant for Smith, and instructed her to call police when she next saw Smith.

In August 2001, Smith, O'Neil, and her children relocated to Florida. During the drive to Florida, Smith conned a cashier into giving him a woman's lost credit card, telling the cashier he was the woman's stepfather. En route to Florida, Smith charged more than $1,400 on the woman's credit card. Once Smith arrived in Florida, he telephoned a Steven P. Smith in Tennessee on August 29, obtaining his date of birth and social security number by telling Steven P. Smith he had won a free trip. Thereafter, Smith committed identity fraud by using the name Stephen P. Smith and charging $15,000 in four Florida cities between August 29 and September 8, 2001. Smith defrauded numerous retailers and incurred credit card charges exceeding $94,000 by using three fraudulent identities in these escapades–Steven C., Steven R., and Steven P. Smith.

## II.  DISCUSSION

On appeal, Smith challenges the district court's application of a two-level enhancement under section 2B1.1(b)(8)(A) for relocating a fraudulent scheme to another jurisdiction to evade law enforcement[3] or, alternatively, under section 3C1.1 for obstruction of justice. Smith also challenges the district court's denial of a three-level reduction under section 3E1.1 for acceptance of responsibility. We review for clear error a district court's factual determinations at sentencing and review de novo its application of the sentencing guidelines. United States v. Wainright, 351 F.3d 816, 824 (8th Cir. 2003).

### A.  Relocating a Fraudulent Scheme

Subsection (b)(8)(A) provides a two-level enhancement if "the defendant relocated, or participated in relocating, a fraudulent scheme to another jurisdiction to

---

[3]Formerly U.S.S.G. § 2F1.1(b)(6)(A).

evade law enforcement or regulatory officials." U.S.S.G. § 2B1.1(b)(8)(A). The Application Notes explain "[i]f the conduct that forms the basis for an enhancement under subsection (b)(8) is the only conduct that forms the basis for an adjustment under § 3C1.1, do not apply that adjustment under § 3C1.1." Id. cmt. n.6(C). The plain language of the subsection requires the district court to find: (1) the defendant relocated from one jurisdiction to another; (2) the fraudulent scheme moved with the defendant; and (3) the defendant intended to evade law enforcement or regulatory officials. Id. § 2B1.1(b)(8)(A).

Smith does not dispute he relocated from Iowa to Florida. Rather, he contends the district court erred in not finding he relocated to Florida because of safety concerns. At sentencing, Smith described multiple threats he received, his resulting fears, and his reasons for relocating to Florida. The government presented substantial evidence discrediting Smith's testimony. The government established Smith did not leave Iowa immediately upon receiving threats on his life. Smith unilaterally terminated contacts with his attorney and federal authorities with whom he had cooperated. Before relocating, Smith resumed both his drug use and credit card fraud scheme. The government also presented evidence suggesting Smith likely knew from either O'Neil or one of her children that federal law enforcement agents had an arrest warrant for Smith. Finally, Smith's actions after his arrival in Florida further evinced his attempt to evade law enforcement by creating another false identity. Smith and O'Neil even concocted a story to dissuade Florida school officials from contacting Iowa school officials to obtain school records for O'Neil's children.

Our review of the sentencing proceedings persuades us Smith had a full and fair opportunity to explain his motives for relocating to Florida. The district court did not believe Smith's testimony, hardly a surprise under the circumstances. In sentencing matters, "a district court's assessment of witness credibility is quintessentially a judgment call and virtually unassailable on appeal." United States v. Luna, 265 F.3d 649, 652 (8th Cir. 2001) (quoting United States v. Causor-Serrato,

234 F.3d 384, 390 (8th Cir. 2000)). Because we conclude Smith's conduct in relocating his credit card fraud scheme from Iowa to Florida to evade law enforcement supports an enhancement under subsection (b)(8)(A), and the district court was not clearly erroneous, discussion on the imposition of an enhancement under section 3C1.1 for the same conduct is not warranted. See U.S.S.G. § 2B1.1 cmt. n.6(C).

###     B.     Acceptance of Responsibility

Smith also claims the district court erred in denying him a three-level reduction for acceptance of responsibility. We give great deference to the district court's determination that Smith failed to accept responsibility, and we will not overturn its determination unless it is clearly erroneous. See United States v. Ervasti, 201 F.3d 1029, 1043 (8th Cir. 2000); U.S.S.G. § 3E1.1, cmt. n.5 ("The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review.").

In denying Smith a reduction for acceptance of responsibility, the district court explained:

> Although [Smith] came in early and began to cooperate, he continued his criminal conduct, and, in fact, relocated it to another area, did a couple of different frauds after he talked to the Government, and . . . if he is accepting responsibility today, it's because he knows he's in trouble rather than having a contrite heart and denouncing his prior criminal activity.

The district court was in a unique position to assess whether Smith accepted responsibility for his offense, and we will not disturb this credibility determination. The credibility of a person convicted of fraud bears little weight. Thus, we conclude

the district court did not clearly err in denying Smith a three-level reduction for acceptance of responsibility.

## III.   CONCLUSION

We affirm Smith's sentence.

_____