[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

----------------------------------------

**No.04-12880**
**Non-Argument Calendar**

----------------------------------------

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 3, 2005
THOMAS K. KAHN
CLERK

D.C. Docket No. 03-00030-CR-WBH-1-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TIMOTHY MORRIS,

Defendant-Appellant.

----------------------------------------------------------------
**Appeal from the United States District Court**
**for the Northern District of Georgia**
----------------------------------------------------------------

**(October 3, 2005)**

Before EDMONDSON, Chief Judge, TJOFLAT and DUBINA, Circuit
Judges.

PER CURIAM:

Defendant-Appellant Timothy Morris appeals his 18-month concurrent sentences, pursuant to his guilty plea, for conspiracy to commit wire fraud, 18 U.S.C. § 371, and unauthorized use of an access device, 18 U.S.C. §§ 1029(a)(2) & 2. Reversible error exists in part: we vacate Defendant's sentence and remand for resentencing.

Defendant was involved in a conspiracy with several others, including his brother, Terrel Morris ("Terrel"), to commit credit card fraud by breaking into lockers at Atlanta-area health clubs, taking credit cards and driver's licenses, and using the stolen cards to buy electronic equipment at retail stores. For example, the indictment stated that, on 31 December 2002, Defendant was involved in the theft of credit cards from a locker at a suburban Atlanta-area health club and the unauthorized charging of nearly $5,000 in goods at local stores. Codefendant Randy Hackler, who lived in Marietta, Georgia, would receive the merchandise and then sell it on eBay or ship it to other states for resale.

Defendant challenges his sentence enhancements for (1) relocating to another jurisdiction to evade law enforcement, U.S.S.G. § 2B1.1(b)(8)(A) (2002); (2) engaging in an offense involving more than 10 but less than 50 victims,

§ 2B1.1(b)(2)(A); and (3) a loss amount between $70,000 and $120,000, § 2B1.1(b)(1)(E).

With sentencing issues, we review a district court's fact findings for clear error and its application of the Sentencing Guidelines de novo. United States v. Auguste, 392 F.3d 1266, 1267 (11th Cir. 2004).

In fraud offenses, the guidelines authorize a two-level enhancement if "the defendant relocated, or participated in relocating, a fraudulent scheme to another jurisdiction to evade law enforcement or regulatory officials . . . ." U.S.S.G. § 2B1.1(b)(8)(A) (emphasis added). Defendant argues that his conduct could not be described as "relocating": at best, his conduct showed that he operated in multiple locations but always sold the merchandise to Hackler, who remained in the same location.[1] The government responds that it presented sufficient evidence that Defendant engaged in overt fraudulent acts outside the Northern District of Georgia.

The guidelines and commentary do not define the term "relocate": we must give that term its "ordinary meaning." United States v. Digiorgio, 193 F.3d 1175,

---

[1] We reject Defendant's argument that this enhancement only was aimed at telemarketers. The Sentencing Commission noted that this enhancement addresses conduct that "often relates to telemarketing fraud, although the conduct also may occur in connection with fraudulent schemes perpetrated by other means." U.S.S.G. App. C, amend. 577; see United States v. Singh, 291 F.3d 756, 761 (11th Cir. 2002).

1178 (11th Cir. 1999). To "relocate" means to "establish or lay out in a new place." WEBSTER'S 3D NEW INT'L UNABRIDGED DICTIONARY 1919 (1976).

At sentencing, the government produced the testimony of codefendant Lamar Turner, who stated that sometimes Defendant or Terrel would go out of town with Turner to engage in credit card fraud. Turner would steal the cards while the other person bought the electronics. Several times Defendant traveled with Turner to Albany, Georgia -- in the Middle District of Georgia -- to perpetrate the fraudulent conduct. Sometimes Terrel's girlfriend would rent an SUV for these trips so that they could transport more merchandise. Turner testified that Defendant and Terrel recruited others who also made similar out-of-town trips. And Turner stated that, as part of the conspiracy, he visited the Carolinas, Texas, Alabama, Mississippi, Ohio, and Arkansas.

The government presented evidence that Defendant left the Northern District of Georgia on occasion to perpetrate the offense conduct. But the government presented no evidence that Defendant or any member of the conspiracy tried to "relocate" the scheme to another jurisdiction, under the ordinary meaning of that word. The evidence about the rental cars suggests that the out-of-town trips were meant to be temporary and that Defendant always returned to the Northern District of Georgia. Also, one stage of the conspiracy

4

was to deliver the goods to Hackler's home, located in the Northern District of Georgia, to allow Hackler to sell the merchandise. The evidence does not show that Hackler's residence changed. And while Turner testified that Defendant recruited others who also made similar out-of-town trips in other jurisdictions, the addition of co-conspirators implies an expansion, and not a relocation, of the conspiracy. In sum, the trips of Morris and his co-conspirators outside of the jurisdiction do not suggest "relocation": the district court erred in applying the enhancement under § 2B1.1(b)(8)(A).[2]

The district court, however, did not clearly err in enhancing Defendant's sentence enhancements for an offense involving more than 10 but less than 50 victims, under § 2B1.1(b)(2)(A)(i). A victim is any person -- including individuals, corporations, and companies -- "who sustained any part of the actual loss." U.S.S.G. § 2B1.1, comment. (n.3(A)(ii)). Turner's testimony suggested that Defendant had engaged in this sort of credit card scheme over a number of years, beginning in the late 1980s, and that Defendant and Terrel made between $10,000 and $15,000 on the more recent out-of-town trips. And Turner, a co-conspirator who worked with Defendant, admitted to being responsible for $200,000 in fraud

---

[2] We thus need not decide Defendant's argument that the evidence did not show that the purpose of the out-of-town trips was to "evade" law enforcement. See U.S.S.G. § 2B1.1(b)(8)(A).

losses. Also, Hackler made nearly $500,000 in sales of electronic equipment on eBay from 1998 until 2002. The presentence investigation report listed only one victim: a credit card issuer. But based on the evidence of the duration of Defendant's acts, the amount of money he, Terrel, and Turner made, and the amount of loss Turner admitted to causing, the district court committed no clear error in determining that the fraud conspiracy caused loss to more than ten victims.

Similarly, the district court did not clearly err in attributing to Defendant a loss amount between $70,000 and $120,000, under § 2B1.1(b)(1)(E). We note that the government did not provide explicit evidence of loss. But it is not unreasonable to assume that the loss that Defendant caused was comparable to the $200,000 loss caused by Turner. Defendant's involvement in the 31December theft of credit cards, which resulted in the unauthorized charging of nearly $5,000 in goods, was only one occasion in which Defendant was involved. The out-of-town trips resulted in between $10,000 and $15,000 in loss. And the evidence suggested that Turner and Defendant operated together in the same type of scheme for at least a few years. The district court's determination attributing to Defendant more than $70,000 but less than $120,000 in loss was reasonable and not impermissibly speculative. See United States v. Miller, 188 F.3d 1312, 1317 (11th Cir. 1999) (because "often the amount of loss caused by fraud is difficult to

6

determine accurately", courts may make a reasonable estimate of loss); United

States v. Wilson, 993 F.2d 214, 218 (11th Cir. 1993) (district court must not

speculate about the existence of a fact that would permit a more severe sentence

under the guidelines).

In sum, the district court committed no clear error in its enhancements for

number of victims and loss. But, under the facts of this case, the district court

erred in applying an enhancement for relocating to another jurisdiction to evade

law enforcement.[3]

**AFFIRMED IN PART, VACATED AND REMANDED IN PART.**

---

[3]Defendant also challenges his sentence under Blakely v. Washington, 124 S.Ct. 2531 (2004), because the court, not a jury, made fact findings that increased his sentence. Defendant did not raise this issue below: we normally would review it for plain error. See United States v. Burge, 407 F.3d 1183, 1186 (11th Cir. 2005). But in the light of our decision to remand for resentencing, we do not address Defendant's Blakely argument. On remand, the district court may entertain this argument and should sentence Defendant consistent with the Supreme Court's decision in United States v. Booker, 125 S.Ct. 738 (2005).