# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3001

_____

|  |  |  |
|---|---|---|
| United States of America, | * | |
|  | * | |
| Appellee, | * | |
|  | * | Appeal from the United States |
| v. | * | District Court for the Western |
|  | * | District of Missouri. |
| Jeans Vega-Iturrino, | * | |
| also known as Diana Garcia, | * | |
| also known as Janet Iturrino, | * | |
|  | * | |
| Appellant. | * | |

_____

Submitted: February 9, 2009
Filed: May 6, 2009

_____

Before RILEY, SMITH, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Jeans Vega-Iturrino pleaded guilty to conspiracy to commit credit card fraud and theft, see 18 U.S.C. § 371, and four counts of access device fraud, see 18 U.S.C. §§ 1029(a)(5) and 2. The district court sentenced Vega-Iturrino to concurrent 36-month terms of imprisonment. Vega-Iturrino appeals, alleging that the district court erred in applying Sentencing Guidelines enhancements to the base offense level for relocating to another jurisdiction to avoid law enforcement and targeting vulnerable victims. Finding non-harmless procedural sentencing error, we reverse the sentence and remand.

## I.

In July 2007, Vega-Iturrino and two accomplices traveled from Burbank, California to Kansas City, Missouri for the purpose of stealing credit cards from shoppers at retail stores. Over a period of nine days, Vega-Iturrino and her co-conspirators successfully swiped credit cards from the purses of eight female victims, including individuals who were 70, 83, 83 and 89 years of age. As to some of their victims, Vega-Iturrino and her co-conspirators employed distraction techniques, including bumping into their victim and engaging their victim in conversation in order to accomplish the thefts. Vega-Iturrino and her co-conspirators then used the stolen credit cards to make retail purchases of items, including expensive electronics and to purchase gift cards.

Prior to sentencing, the United States Probation Officer for the Western District of Missouri prepared a presentence report (PSR) which included the recommendation that Vega-Iturrino's base offense level be increased by two levels because she relocated, or participated in relocating a fraudulent scheme from another jurisdiction to evade law enforcement pursuant to United States Sentencing Commission, Guidelines Manual (USSG) §2B1.1(b)(9)(A) (Nov. 2007), and by an additional two levels because she knew or should have known that a victim of the offense was a vulnerable victim pursuant to USSG §3A1.1(b)(1). Vega-Iturrino filed objections to the recommended offense level adjustments. At sentencing, the district court over-ruled Vega-Iturrino's objections and found her total offense level to be 20 and her criminal history category to be III, yielding a sentencing range of 33 - 41 months. The court then sentenced Vega-Iturrino to 36 months imprisonment on each count with the terms to run concurrently.

## II.

"We review all sentences, whether inside or outside the Guidelines range, under a deferential abuse of discretion standard." United States v. Pepper, 518 F. 3d 949, 951 (8th Cir.), cert. denied, 129 S. Ct. 138 (2008) (citing Gall v. United States, 552 U.S. ___, ___, 128 S. Ct. 586, 597 (2007)). We first ensure that the district court did not commit a significant procedural error. Id. Such errors include "failing to calculate (or improperly calculating) the Guidelines range . . . ." Gall, 128 S. Ct. at 597. "We review the district court's factual findings for clear error, and its application of the guidelines de novo." United States v. Blankenship, 552 F.3d 703, 704 (8th Cir. 2009). Further, "[t]he predicate facts supporting an enhancement must be found by a preponderance of the evidence." United States v. Myers, 481 F.3d 1107, 1110 (8th Cir. 2007).

Vega-Iturrino submitted written objections to the PSR, challenging the application of USSG § 2B1.1(b)(9)(A) and USSG § 3A1.1(b)(1). However, she did not object to the facts contained in the PSR, we therefore accept the PSR's factual allegations as true. United States v. Mosqueda-Estevez, 485 F.3d 1009, 1010 (8th Cir. 2007).

Vega-Iturrino contends that the district court committed significant procedural error in applying a two-level enhancement under USSG § 2B1.1(b)(9)(A) for relocating a fraudulent scheme from another jurisdiction to evade law enforcement. "The plain language of the subsection requires the district court to find: (1) the defendant relocated from one jurisdiction to another; (2) the fraudulent scheme moved with the defendant; and (3) the defendant intended to evade law enforcement or regulatory officials." United States v. Smith, 367 F.3d 737, 740 (8th Cir. 2004), vacated and remanded on other grounds, 543 U.S. 1103 (2005). Vega-Iturrino does not contest that she relocated from California to Missouri. However, she argues that

application of the enhancement is inappropriate because the government did not establish that she relocated with the intent to evade a specific threat of imminent arrest.

We do not find in the guideline a requirement that the relocation be motivated by a "specific" threat of arrest as opposed to a more general intent to evade law enforcement. According to the PSR, Vega-Iturrino and her co-conspirators flew from California to Kansas City, Missouri under assumed names with the purpose of stealing credit cards from shoppers, she made purchases using the identities and credit cards of her victims, and, upon her arrest, she was found to be in possession of counterfeit drivers licenses and other identification documents. These facts are sufficient to support the district court's finding that Vega-Iturrino relocated with the intent to evade law enforcement. See Smith, 367 F.3d at 739-40 (appellant's commission of identity fraud by making purchases and incurring charges by using three fraudulent identities after relocation evidences an attempt to evade law enforcement under the guideline).

Over Vega-Iturrino's objection, the district court also applied an upward adjustment to the base offense level by virtue of its finding that Vega-Iturrino "knew or should have known that a victim of the offense was a vulnerable victim." USSG §3A1.1(b)(1). In responding to Vega-Iturino's objection, the probation officer asserted that Vega-Iturrino and her co-conspirators targeted older women, three of the victims were over the age of 80, and Vega-Iturrino had personal contact with at least two of these victims providing her an opportunity to be aware that they "were vulnerable due to their ages and/or physical condition." Addendum to PSR at 4. However, neither the PSR nor the sentencing transcript set forth any specific facts demonstrating the nature of the victim's alleged vulnerability.

-4-

To apply an enhancement under § 3A1.1(b)(1), "the sentencing court must still determine whether a victim was . . . unusually vulnerable due to age or some other characteristic." United States v. Anderson (Anderson I), 349 F.3d 568, 572 (8th Cir. 2003) (quotation omitted). "In making this determination, we do not apply a blanket assumption that an advanced age is sufficient to render a victim vulnerable." United States v. Anderson (Anderson II), 440 F.3d 1013, 1018 (8th Cir. 2006). This enhancement "requires a fact-based explanation of why advanced age or some other characteristic made one or more victims 'unusually vulnerable' to the offense conduct, and why the defendant knew or should have known of this unusual vulnerability." Anderson I, 349 F.3d at 572; see also Anderson II, 440 F.3d at 1017-18 (victim of defendant's mail fraud and money laundering scheme was unusually vulnerable because the victim had received only an eighth grade education, had no experience or understanding of investments outside of connection with the defendant). In Anderson I, this court reversed a sentencing enhancement under § 3A1.1(b)(1) where neither the PSR nor the sentencing transcript set forth any facts other than the elderly status of the victims. The district court had failed to supplement the PSR with additional fact-finding, merely stating that "I hereby make the factual findings implicit in my decision." Anderson I, 349 F.3d at 571. As a result, we remanded for resentencing because the enhancement lacked sufficient evidentiary support. Id. at 573. On remand, the sentencing court held a resentencing hearing and made additional factual findings with regard to the elderly victim's vulnerabilities. Anderson II, 440 F.3d at 1018.

Here, the district court provided no explanation in announcing that it was overruling Vega-Iturrino's objection to application of the USSG §3A1.1(b)(1) enhancement. The only indication of the district court's reasoning is found in its query to Vega-Iturrino's attorney, prior to hearing the objection, that "three of the ladies were over 80 years old or over the age of 80, and . . . the information reflects that the defendant and her codefendants targeted older women to steal from. You

don't think that's enough?" Sentencing Tr. at 12-13. Neither from the sentencing or the PSR do we discern a "fact-based explanation" of why Vega-Iturrino's victims were vulnerable. Rather, in finding that Vega-Iturrino's victims were vulnerable under USSG §3A1.1(b)(1), the district court improperly equated age with vulnerability.

Accordingly, based upon the record before us, we conclude that the district court lacked a sufficient factual basis to determine that Vega-Iturino's victims were vulnerable for purposes of § 3A1.1(b)(1), and thus the district court improperly calculated Vega-Iturino's offense level and advisory Guidelines range, which constitutes significant procedural error. See Gall, 128 S. Ct. at 597; United States v. Spikes, 543 F.3d 1021, 1023 (8th Cir. 2008). Since we cannot determine what sentence the district court would have imposed under a properly calculated Guidelines range, this procedural error was not harmless. Spikes, 543 F.3d at 1026.

## III.

We vacate Vega-Iturrino's sentence and remand to the district court for resentencing.

_____