WILLIAMS, Circuit Judge.
Verita Hines-Flagg and her nephew operated a fraud scheme based in Detroit. They stole identities and created fake identifications. Then they traveled to other states to open credit card accounts, bought merchandise, and returned to Detroit to sell the goods. After being caught, Hines-Flagg pled guilty to one count of conspiracy to commit mail and wire fraud and one count of aggravated identity theft. *753 At the sentencing hearing, the district court sentenced Hines-Flagg to three years for the conspiracy to commit mail and wire fraud and to a mandatory consecutive two-year sentence for aggravated identity theft, resulting in an aggregate five-year prison sentence. In calculating the Guidelines offense level, the court applied a two-level increase to the count for conspiracy to commit mail and wire fraud for relocating the fraud scheme to evade law enforcement under U.S.S.G. § 2Bl.l(b)(10)(A). Hines-Flagg is challenging the application of this two-level increase. She argues that she neither relocated the fraud scheme to another jurisdiction nor did so with the intent to evade law enforcement. We find that the fraud scheme was not relocated for the purposes of U.S.S.G. § 2Bl.l(b)(10)(A) and that the district court’s application of the resulting two-level increase to the count for conspiracy to commit wire and mail fraud was a procedural error. Therefore, we vacate Hines-Flagg’s sentence and remand for resentencing.
I. BACKGROUND
In early October 2012, Verita Hines-Flagg, a lifetime resident of the Detroit area, and her nephew Benjamin Hines drove from Detroit to Milwaukee with the aim of opening fraudulent lines of credit at various retail stores in the Milwaukee area. The pair was going to use fake identification documents they had made back at Hines-Flagg’s home in Detroit to purchase merchandise on credit from various stores. Once sufficient merchandise had been obtained, the pair planned to return home to Michigan to fence the merchandise.
Upon arriving in Milwaukee, Hines-Flagg opened credit accounts at a number of retail stores between October 2 and 4, 2012. However, on October 4 their plans went awry when local police received a complaint from a Kohl’s Department Store in Brown Deer, Wisconsin regarding the opening of a suspicious credit account and the subsequent purchase of store merchandise on the account. The complaint also indicated that the two suspects were still in the store’s parking lot. When the police arrived they found both Hines and Hines-Flagg in a vehicle filled with retail merchandise, valued at approximately $20,000, that had been purchased from several stores using fraudulent identification. Both Hines and Hines-Flagg were arrested. '
Further investigation revealed that Hines-Flagg and others had leased the car, a Lincoln MKZ, from an Illinois car dealership in June 2012 using fraudulent identification. Additionally, Hines-Flagg and her co-actors had fraudulently leased four other luxury vehicles between June 24 and June 28 from various Illinois car dealerships. The additional vehicles were recovered in Michigan in the possession of friends or family of Hines and Hines-Flagg.
Following his arrest, Hines explained to police how the fraud scheme operated. First, Hines-Flagg would identify various potential victims who resided in states other than Michigan who had a good credit history. Once the victims were selected, Hines-Flagg and her co-actors would obtain the victims’ credit reports and make fake identifications using her home computer in Detroit. Then, Hines and Hines-Flagg would travel to other states,[1] approximately twice a year, to open store credit card accounts and shop using the fraudulent identifications. The pair would typically bring three or four fake identifications when they left from Detroit to make fraudulent purchases. And they would not hit a town more than twice in *754 order to cut down on the chances of getting caught. After the purchasing sprees, the merchandise was brought back to Detroit to be fenced or kept for personal use.
In December 2013, a grand jury in the United States District Court for the Eastern District of Wisconsin returned a six-count indictment against Hines-Flagg. She was charged with one count of conspiracy to commit mail and wire fraud (18 U.S.C. § 1341) and five counts of aggravated identity theft (18 U.S.C. § 1028A). On April 29, 2014, Hines-Flagg pled guilty to the conspiracy to commit mail and wire fraud count and one count of aggravated identity theft.
The plea agreement reflected the government’s intent to recommend a two-level increase to the offense level under U.S.S.G. § 2Bl.l(b)(10)(A). The presen-tence report also recommended the same two-level sentencing enhancement. U.S.S.G. § 2Bl.l(b)(10)(A) prescribes a two-level increase if the defendant (1) relocated, or participated in relocating, a fraudulent scheme to another jurisdiction, and (2) did so to evade law enforcement (or regulatory officials). Hines-Flagg objected to the increase on the grounds that she neither relocated the scheme to another jurisdiction nor did so with the intent to evade law enforcement.
On August 21, 2014, the district court rejected these arguments and sentenced Hines-Flagg to 36 months (three years) for the fraud conspiracy and to a mandatory consecutive two-year sentence for aggravated identify theft, resulting in a total sentence of five years in prison. The court also imposed a supervised release term of three years. In calculating the offense level for the conspiracy to commit mail and wire fraud count, the court applied the two-level increase for relocating the fraud scheme to evade law enforcement.[2] Hines-Flagg appeals.
II. ANALYSIS
On appeal, Hines-Flagg once again argues that the two-level increase to the offense level under U.S.S.G. § 2Bl.l(b)(10)(A) to the fraud conspiracy count was improperly applied because the fraud scheme was never relocated and alternatively, even if the scheme was relocated, it was not relocated to evade law enforcement.
We generally “review the district court’s application of the Sentencing Guidelines de novo and its factual findings for clear error.” United States v. Jumah, 599 F.3d 799, 811 (7th Cir.2010). U.S.S.G. § 2Bl.l(b)(10)(A) requires a two-level increase if “the defendant relocated, or participated in relocating, a fraudulent scheme to another jurisdiction to evade law enforcement.” Therefore, the inquiry into whether U.S.S.G. § 2Bl.l(b)(10)(A) is applicable has two prongs: (1) whether the defendant relocated, or participated in relocating, a fraudulent scheme to another jurisdiction and (2) whether the relocation was done with the intent to evade law enforcement. Id.; United States v. Savarese, 686 F.3d 1, 15 (1st Cir.2012). The Guidelines and their commentary do not define “relocated” or “evade.”
A. There Was No Relocation of the Scheme Under U.S.S.G. § 2Bl.l(b)(10)(A).
The history of the provision indicates that the Sentencing Commission added the enhancement to the Guidelines in order to “address conduct that the Commission ha[d] been informed often relates to tele *755 marketing fraud, although the conduct also may occur in connection with fraudulent schemes perpetrated by other means.” U.S.S.G. app. C (2003). Specifically, “testimony offered at a Commission hearing on telemarketing fraud indicated that telemarketers often relocate their schemes to other jurisdictions once they know or suspect that enforcement authorities have discovered the scheme.” Id.
With this history in mind, we turn first to Hines-Flagg’s argument that she did not relocate the fraudulent scheme to another jurisdiction. Hines-Flagg does not contest the factual findings of the district court. . Instead, she limits her argument to the meaning of “relocated.” She argues that this court should define “relocate” as the moving of something with a fixed location, like one’s residence or place of business, from one place to another, which she contends is the everyday meaning of the word, referencing Dictionary.com. See United States v. Taliaferro, 211 F.3d 412, 415 (7th Cir.2000) (“In the absence of a definition of a term in the guidelines, courts are to look to the common-law definition or the plain meaning of the term.”). Under her definition, Hines-Flagg’s temporary trips to other jurisdictions to fraudulently purchase merchandise would not amount to a relocation under the Sentencing Guidelines.
We find that Hines-Flagg’s scheme was not relocated under U.S.S.G. § 2Bl.l(b)(10)(A). The Guidelines language “clearly refers to relocation of the scheme only, not the relocation of the defendant.” United States v. Paredes, 461 F.3d 1190, 1193 (10th Cir.2006) (emphasis in original). We do not believe that this Guideline applies to every fraudulent scheme that just happens to operate in multiple jurisdictions. The Guideline does not state that it applies to fraudulent schemes that operate in or cross multiple jurisdictions, nor does any commentary on this sub-section indicate such an application. Hines-Flagg’s scheme was always meant to operate in multiple locations, with Detroit as its home base. In other words, it was always located in multiple jurisdictions. Therefore, the scheme was not “relocated” to Wisconsin, Ohio, and Illinois when Hines-Flagg traveled to those locations for temporary trips and returned to Detroit.
In United States v. Morris, the Eleventh Circuit found no relocation where the defendants operated a fraudulent scheme in the Atlanta area and surrounding districts of stealing credit cards, using those .credit cards to purchase electronics, and fencing the merchandise. 153 Fed.Appx. 556, 557-58 (11th Cir.2005) (unpublished opinion). In reaching its decision, the court adopted the “ordinary meaning” of “relocate,” defining it as “to ‘establish or lay out in a new place.’ ” Id. at 558 (quoting Webster’s 3d New Int’l Unabridged Dictionary 1919 (1976)). At sentencing, the government produced the testimony of a co-defendant who said that the conspirators would sometimes go out of town to engage in credit card fraud, including to Albany (in the Middle District of Georgia), the Carolinas, Texas, Alabama, Mississippi, Ohio, and Arkansas. Id. The district court applied the enhancement, but the Eleventh Circuit reversed, finding that the government’s evidence of the defendant venturing outside of the Northern District of Georgia did not establish a relocation under the ordinary meaning of the term. Id. Rather, the court said, the out of town trips were meant to be temporary and amounted to “an expansion, and not a relocation, of the conspiracy.” Id. In support of its holding, the court indicated that the primary location of the scheme was always Atlanta. Id. The court specifically noted that the fraudulently obtained merchandise was always delivered to, and eventually fenced from, the same location in Atlan *756 ta. Id. This indicated a strong connection to Atlanta that the defendants never attempted to sever or relocate. See id.
Similarly here, we find no indication that Hines-Flagg relocated the fraudulent scheme under the common understanding of the term. See id. at 558. The plan was always that the stolen merchandise would be returned to and fenced in Detroit. Detroit was the hub of Hines-Flagg’s operations and the temporary trips to other states operated as spokes. Cf. Savarese, 686 F.3d at 15. In Savarese, the First Circuit reserved judgment on whether to officially adopt a hub and spoke approach to evaluating relocation under U.S.S.G. § 2Bl.l(b)(10)(A), the hub and spoke theory being that where a fraudulent scheme operates with one hub and several spokes, the scheme is not “relocated” when the defendant travels to different spokes as part of the scheme. Id. However, the court applied the framework to demonstrate the flaws in the defendant’s argument, affirming application of the enhancement. Id. It found that because the components of the scheme that occurred outside of Boston (the defendant’s city of residence) were “at least as critical, if not more so, to the operation’s success than any of its other elements” that occurred in Boston, these acts comprised the true “heart of the enterprise” and “the fact that other tangential elements recurred in a convenient geographic locale [Boston]” did not render that location the scheme’s “hub.” Id. Instead, the scheme “might best be described not as hub with spokes, ... but as two hubs adjoined.” Id. It found that because at least one of the hubs moved across jurisdictions, 'the district court did not clearly err in applying the enhancement. Id. at 15-16.
Hines-Flagg’s scheme is more similar to the one in Morris than the one in Sa-túrese. Like Atlanta in Morris, Detroit played a central role in Hines-Flagg’s scheme. Hines-Flagg procured all the fraudulent identities, created the fake identifications, and fenced the stolen merchandise all in Detroit. Were we to use Savarese’s approach, Detroit would be “the heart of th[is] enterprise,” 686 F.3d at 15. Under our analysis, the trips to other jurisdictions were certainly part of the scheme, but they do not amount to a relocation, since the scheme was always set up to operate multi-jurisdietionally. The district court erred in applying the two-level enhancement during Hines-Flagg’s sentencing.
Because we find an error occurred based on the district court’s interpretation of relocation under U.S.S.G. § 2Bl.l(b)(10)(A), we do not need to rule on whether any hypothetical relocation was done “to evade law enforcement.” However, we note that most criminal enterprises are set up' to avoid getting caught. Based upon the plain language of the Guideline, we believe application of this enhancement requires more than just the operation of a multi-jurisdictional scheme in order to reduce the chances of detection. Cf. Paredes, 461 F.3d at 1192 (determining that the scheme relocated “to evade law enforcement” where fraudulently obtained goods “moved from Utah to Idaho because Utah became ‘hot’ after one of the [participants] was arrested”); United States v. Smith, 367 F.3d 737 (8th Cir.2004) vacated and remanded on other grounds, 543 U.S. 1103, 125 S.Ct. 1005, 160 L.Ed.2d 1016 (2005) (finding that evidence established that the defendant — who operated a fraud scheme in Iowa and then moved permanently to Florida and began operating a fraud scheme there — moved in order to evade law enforcement where he had been arrested several times for fraud and other crimes in Iowa and a warrant for his arrest was outstanding in Iowa). But see United States v. Vega-Iturrino, 565 F.3d *757 430, 433 (8th Cir.2009) (finding that relocation need not “be motivated by a ‘specific’ threat of arrest as opposed to a more general intent to evade law enforcement”).
B. The Enhancement Error Was Not Harmless.
We turn now to whether the error by the district court in applying the enhancement was harmless. “It is important to emphasize that ... our harmless error determination and review of the sentence’s reasonableness are separate” inquiries. United States v. Abbas, 560 F.3d 660, 667 (7th Cir.2009). First, we must determine whether the district court’s sentencing is procedurally sound. Id. Second, if the district court’s sentencing is procedurally sound we must “then consider the substantive reasonableness of the sentence under an abuse-of-discretion standard.” Id. (quoting Gall v. United States, 552 U.S. 38, 51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007)).
The district court must correctly understand what the Guidelines recommend. United States v. Alldredge, 551 F.3d 645, 647 (7th Cir.2008). After getting the Guidelines right, it has discretion to take the individual defendant’s circumstances into account. Id. However, the “recognition that some Guideline miscalculations can be harmless does not change these basic principles.” Abbas, 560 F.3d at 667. “It merely removes the pointless step of returning to the district court when we are convinced that the sentence the judge imposes will be identical to the one we remanded.” Id. Therefore, to prove harmless error, the government must be able to show that the guidelines error “did not affect the district court’s selection of the sentence imposed.” Id. When a Guidelines range is miscalculated, we have historically looked for an unequivocal statement by the sentencing court that it would have imposed the same sentence under a correct application to find harmless error. See id.; United States v. Anderson, 517 F.3d 953, 965 (7th Cir.2008).
Here, we have found that the district court improperly applied U.S.S.G. § 2Bl.l(b)(10)(A) to Hines-Flagg’s sentence and therefore miscalculated the Guidelines range. This mistake constitutes a significant procedural error. See Gall, 552 U.S. at 51, 128 S.Ct. 586; Abbas, 560 F.3d. at 666. The government offers no “firm assurances”.that the district court would have imposed the same sentence if it had properly calculated the Guidelines. See United States v. Zahursky, 580 F.3d 515, 528 (7th Cir.2009). And the district court did not state that it would have imposed the same sentence without application of the enhancement. Therefore, we find the misapplication of U.S.S.G § 2Bl.l(b)(10)(A) was not harmless error. Because we find a reversible procedural error in the application of U.S.S.G. § 2Bl.l(b)(10)(A), we do not need to make a determination as to whether Hines-Flagg’s sentence was nevertheless reasonable.
III. CONCLUSION
For the foregoing reasons, we Vaoate Hines-Flagg’s sentence and Remand for resentencing in accordance with this opinion.

. Hines and Hines-Flagg traveled to Ohio, Wisconsin, and Illinois.

. As a result of the two-level increase, Hines-Flagg's Guidelines range on the mail fraud count was 41-51 months based on an offense level of 22 and a criminal history of I. Without the enhancement, her range would have been 33-41 months.